**Harriet HOLMBERG,**
**Plaintiff–Appellant,**

v.

**BAXTER HEALTHCARE CORPORA-TION, formerly known as Travenol Laboratories, Incorporated, Defendant–Appellee.**

No. 89–2442.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1990.

Decided May 2, 1990.

Laurie Leader, Levin & Ginsburg, Chicago, Ill., for plaintiff-appellant.

David J. Parsons, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., FLAUM and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff Harriet Holmberg brings this suit to remedy the age discrimination she claims was a determinative factor in her discharge from defendant Baxter Healthcare Corporation's ("Baxter") facility located in the Chicago area. The district court granted summary judgment in favor of Baxter, and Holmberg now appeals. In addition to the merits, we will consider Holmberg's motion to strike portions of Baxter's brief and the company's motion to supplement the record on appeal. For the reasons stated below, we grant Holmberg's

motion, deny Baxter's motion, and affirm the judgment of the district court.

## I. FACTUAL BACKGROUND

Holmberg's career as a microbiologist commenced in 1958 when she started working for Baxter, a manufacturer and distributor of pharmaceutical products.[1] Until regulatory and scientific developments in the mid–1970s began to alert Baxter to the need for better sterilization practices, Holmberg mainly performed research and product development functions. In January 1977, Baxter reassigned Holmberg to a temporary "good laboratory practices" task force. After the task force's term expired, Holmberg returned to her role as a research assistant in Baxter's Microbiology Department.

Beginning in June 1978, Holmberg was promoted to the position of research associate I, a generic title used by Baxter to describe a number of various employees. Holmberg now produced and directed training films on sterility test procedures. During this same time, Holmberg also functioned as the "good laboratory practices" coordinator. Holmberg stopped making training films in the middle of 1980 but continued in the coordinator position until 1982 when she became a research associate I in product development under the supervision of Dr. Theron Odlaug.

In September 1983, Baxter merged its Microbiology Department, which included Holmberg, and its Engineering Sterility Group into a new Sterility Assurance Department. Dennis Bridge headed the new department with Dr. Odlaug and Dr. Kai Purohit taking charge of the department's two subsections. Holmberg still performed the same work as before the merger, but Dr. Odlaug now indirectly supervised her, operating through an intermediate manager.

Shortly after taking charge, Bridge began to streamline the entire Sterility Assurance Department. As part of this effort, Holmberg was transferred in June 1984 from the product development section to the research section under the direction of Dr. Purohit. At the time of the plaintiff's transfer, the three other persons holding the title of research associate I remained behind in product development; all three were under the age of forty.

Anticipating budget cuts, Bridge made a decision to reduce staff shortly after the reorganization. In a meeting with his subordinates, Dr. Purohit and Dr. Odlaug, Bridge asked them to recommend "middle person" and "paperwork" jobs that could be eliminated. Bridge wanted to cut the jobs that would have the least impact on the functioning of the department and determined that Dr. Purohit's division could function with only one research associate I. At this time, Holmberg and thirty-two year old Lawrence Hervey were the only persons holding this position, and, after a meeting with Dr. Odlaug and Dr. Purohit, Bridge decided that Holmberg's position would be the one eliminated. Therefore, on November 7, 1984, Baxter dismissed Holmberg, then age 48, from her employment with the company. Both parties stipulated that Baxter never hired anyone to perform the same functions as Holmberg had been performing.

Bridge also eliminated seven other positions, only two of which involved employees over the age of forty and thereby within the protected age group. Before Baxter communicated any of the terminations to the impacted employees, Bridge worked within the company to find alternative positions for all those laid off. Of the eight fired individuals, four eventually found positions within Baxter or one of its subsidiaries, with one of these four and a fifth person using Baxter's facilities after their termination date as part of their employment search. These five persons were all under the age of forty. The other three former employees—Holmberg, Charles Norris, and Henderson Feagin—were all within the protected age group. By virtue of their positions at Baxter, Norris and Feagin were entitled to the use of an em-

---

1. Baxter was formerly known as "Travenol Laboratories, Inc." For simplicity's sake, we will consistently refer to the defendant simply as "Baxter."

ployment agency to assist them in an outside job search, and although she was not entitled to it, Baxter extended the same services to Holmberg.

Despite the layoffs, several vacancies existed within Bridge's Sterility Assurance Department. One of these vacancies was for a senior engineer, requiring a person with a bachelor of science degree and experience in engineering or an equivalent physical science. The position would have involved the design and development of processes to sterilize Baxter's products and equipment. On the advice of a first-level manager at Baxter, Holmberg inquired about the position but was rejected on the grounds that she was not qualified. Baxter eventually hired a thirty-six year old to fill the vacancy, who, from our examination of the record, appears to have been an engineer.

On these facts, Holmberg brought the present suit alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"). Under the burden-shifting method used in cases of employment discrimination, the district court held that Holmberg had failed to establish a prima facie case or, alternatively, that Holmberg did not show pretext in Baxter's articulated nondiscriminatory reasons for firing her. Thus, the district court granted summary judgment for Baxter and later refused to reconsider its decision in a Fed.R.Civ.P. 59 motion filed by Holmberg.

## II. Discussion

■ To prevail on her claim of age discrimination, Holmberg must establish, by direct or circumstantial evidence, that Baxter discharged her because of her age. *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1153 (7th Cir.1989). Lacking direct evidence, Holmberg relies on the more commonly used burden-shifting method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If Holmberg demonstrates a prima facie case of age discrimination, the burden of production shifts to Baxter to articulate a nondiscriminatory reason for her dis-

charge. *La Montagne v. American Convenience Prods., Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). Holmberg then must show that Baxter's reasons for her dismissal are merely a pretext for discrimination, explanations unworthy of credence. *Id.* While the burden of production may shift to the defendant, the burden of proving age discrimination always remains with the plaintiff. *Id.* Even though Baxter is the moving party, it is entitled to summary judgment if Holmberg has failed to make a sufficient showing on any of these essential elements. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Holmberg does not allege that Baxter replaced her with a younger employee but that Baxter treated her less favorably than younger employees as part of a reduction in its work force. Therefore, for Holmberg to establish a prima facie case, she must show that (1) she was within the protected age group; (2) she was performing according to her employer's legitimate expectations; (3) she was terminated; and (4) others not in the protected class were treated more favorably. *Oxman v. WLS-TV,* 846 F.2d 448, 455 (7th Cir.1988). Baxter concedes the first three elements but challenges Holmberg's assertion that employees under the age of forty were treated more favorably. The defendant, however, cannot deny that some distinctions exist between Holmberg's and other employees' experiences at Baxter. For example, Baxter assigned Holmberg in the 1970s to a "good laboratory practices" task force that included only a small number of Baxter's total work force, and the company also afforded Holmberg the use of an employment agency's services at the time of her discharge, an opportunity not open to others. Instead of denying these differences, Baxter argues that sound business reasons justify the actions taken with respect to the plaintiff's career and thus negate any inferences of favoritism toward employees under the age of forty.

Baxter also offers many of these same business justifications to satisfy its burden of producing nondiscriminatory explana-

tions for its conduct. Similarly, Holmberg attacks Baxter's explanations as a pretext for discrimination for many of the same reasons that she claims Baxter treated younger employees more favorably. It is difficult to separate Holmberg's prima facie case from Baxter's nondiscriminatory explanations and Holmberg's proof of pretext. Rather than make our inquiry more difficult through the rigid and mechanistic application of the *McDonnell–Douglas* burden-shifting analysis, *see United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983), we will analyze this case shifting our focus as appropriate from Holmberg's prima facie burden to her burden of showing pretext. Where Holmberg has not met her burden of showing that Baxter's explanations are merely a pretext for discrimination, it is not necessary to decide whether she also established a prima facie case. *Box v. A & P Tea Co.,* 772 F.2d 1372, 1378 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986).

■ Holmberg submits four different episodes to establish her claim of age discrimination: (1) her June 1984 transfer from product development to research followed by her discharge in November 1984; (2) Baxter's failure to rehire her into the senior engineer position; (3) the differences in opportunities offered to her and to younger employees after their layoff from Baxter; and (4) discriminatory work assignments in the 1970s. Holmberg has simply failed to meet her burden of showing that Baxter's explanations for any one of these incidents is merely pretextual. While we heed Holmberg's warnings to view the evidence as a whole, the sum of four nondiscriminatory episodes does not support her case anymore than viewing the four episodes separately. Therefore, we will explore each of these incidents in turn.

The plaintiff first advances her June 1984 transfer and her November 1984 dismissal as evidence of age discrimination; Holmberg postulates that the transfer from product development was a precursor for her subsequent dismissal. The undisputed facts establish that of the four persons holding the title of research associate I in the product development section, the plaintiff was the only one over forty years of age and the only one transferred to another section. Beyond Holmberg's speculation that the transfer was part of a scheme to end her employment at Baxter, she has not demonstrated how the transfer adversely affected her. Even accepting Holmberg's inference of the transfer as a gateway to her dismissal, the transfer still does not constitute evidence of age discrimination, because the ultimate dismissal itself was nondiscriminatory.

Baxter submitted evidence to the district court showing that Holmberg's position was slated for elimination because management believed her department could save money by transferring many of her job functions to a specific different employee who also happened to be under the age of forty.[2] Bridge, who had overall responsibility for Holmberg's department, stated in a deposition that he believed the other employee to be more qualified than the plaintiff. More importantly, although four were eventually given new positions within the Baxter conglomerate, five of the eight persons laid off at the time of Holmberg's dismissal were under the age of forty. Beyond her own self-serving statements, Holmberg has not put forth any evidence that Bridge's statements are factually incorrect or that she was qualified to perform the tasks of the other employee who was not laid off. Instead, Holmberg rests on assertions that Bridge's other actions and statements inherently contradict his deposition testimony. The record speaks

---

2. Holmberg argues that by hiring, transferring, and promoting persons into other positions after she was laid off, Bridge belies his own assertion that Holmberg's position was eliminated for budgetary reasons. Holmberg, however, has misinterpreted Bridge's statements. While he believed that the plaintiff's position was non- essential to the functioning of the Sterility Assurance Department, that did not mean Bridge believed other positions within the department could remain vacant. It was not inconsistent, therefore, for Bridge to hire persons to fill other positions while eliminating Holmberg's job.

louder than Holmberg's inferences from it, leading us to believe that a reasonable jury could not credit her ruminations over Baxter's evidence.

Holmberg also seizes upon Baxter's failure to hire her for a vacancy in a senior engineer position and its subsequent employment of a thirty-six year old person in that spot. To explain itself, Baxter countered that Holmberg was simply unqualified for the senior engineer position, and the company supported its statements with proof that the job position required a bachelor of science degree in an engineering or equivalent scientific discipline. Like the district court, we will not strain to interpret the job listing as alternatively calling for a microbiologist or an engineer, when the obvious intent was to hire someone with a background in a physical science like engineering. Holmberg does not dispute that she holds a bachelor of arts degree in biology, credentials that fail to meet the qualifications listed in Baxter's job posting for the position, but essentially attacks Baxter's judgment that a microbiologist could

not function in the senior engineer position.[3] While management's poor business judgment may be a concern for shareholders, it does not give rise to a claim for employment discrimination. See *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 20–21 (7th Cir.1987).

 We turn next to the circumstances surrounding the plaintiff's dismissal. Of the eight persons laid off with Holmberg, four were eventually offered alternative employment within the Baxter organization and all four were under the age of forty. As to these four employees, Holmberg apparently contends that Baxter should have treated her in a like manner and given her a new position. Implicit in Holmberg's claim, however, is a requirement that she was qualified to fill other positions. See *Oxman*, 846 F.2d at 455. Holmberg has not come forward with evidence that would show she was qualified to fill the alternative positions given to the four employees or even that Baxter had positions available for persons with her qualifications.[4] Therefore, we cannot find

3. A man named Jim Owens was the immediate supervisor for the senior engineer position. Holmberg insists that Owens was responsible for making the final selection of the new senior engineer and that Owens had told her he wanted to hire a microbiologist into that position. To support her argument, Holmberg cites to an oblique reference in a deposition that "the potential supervisor" routinely interviewed applicants for new positions within the company. Holmberg contradicted her own assertions by admitting in deposition testimony that Owens told her that he did not have responsibility for interviewing or hiring persons in the senior engineer position. Holmberg's assertions about Owens's statements surrounding the senior engineer vacancy do not create a genuine issue regarding Holmberg's qualifications for the position.

4. At this juncture, Holmberg's motion to strike portions of Baxter's brief and the company's motion to supplement the record become relevant to the case. In its brief, Baxter attempts to preclude Holmberg from showing that she possessed the necessary qualifications for any of the alternate internal positions found for the four younger employees. In making this argument, Baxter unfavorably compares the qualifications of these four employees to Holmberg's credentials. Nowhere in the record, however, is there evidence regarding the four employees' qualifications. To the extent Baxter's brief makes a reference to these facts outside the

record, those portions of the brief are properly stricken. Therefore, pages 7 and 19–21 along with footnote 5 of the defendant's brief are stricken. We do not need to strike footnote 16 of the defendant's brief, because the mere failure to refer a properly received argument to a specific part of the record does not warrant striking the argument.

To combat Holmberg's motion, Baxter had filed a motion to supplement the record on appeal with evidence of the four younger employees' credentials. Although these documents may have been produced for Holmberg, they were never entered into the record as evidence. We think that Holmberg's arguments below fairly warned Baxter that the personnel files relating to these four employees might become relevant to this case, and if Baxter wanted these files placed in the record, it had ample opportunity to do so in the proceedings before the district court. We agree with Holmberg that Baxter is impermissibly attempting to build a new record on appeal. See *Anthony v. United States*, 667 F.2d 870, 875 (10th Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982).

If Baxter had the burden to establish the lack of comparability between Holmberg and the other terminated employees, the exclusion of this evidence from the record would make this a close case. To prevail on its summary judgment motion, however, Baxter does not have to negate Holmberg's claim if she has failed to

that Holmberg has established that employees outside the protected age group were treated more favorably.

■ Furthermore, Baxter has advanced nondiscriminatory explanations for its conduct in not finding alternate internal employment for Holmberg. In deposition testimony, Baxter established that, even though they were not successful with Holmberg's case, equal efforts to find alternative intracompany positions were exerted on behalf of all the terminated employees. Baxter also held the belief that it was treating the plaintiff more favorably by affording her the use of an employment agency to find alternative employment, an opportunity not given to any of the terminated employees under the age of forty. The gist of Holmberg's argument rebutting these explanations is that they must not be true because she did not obtain alternate intracompany employment. This circular reasoning does not meet Holmberg's burden of showing pretext by evidence specifically responding to the company's reasons for her treatment.[5] *See La Montagne*, 750 F.2d at 1414 (plaintiff's rebuttal evidence of pretext should focus on specific nondiscriminatory reasons given by the defendant).

The plaintiff's final piece of evidence is a supposed historical pattern of age discrimination against her that eventually led to her dismissal in 1984. Holmberg suggests that her work assignments in the 1970s and early 1980s were part of a plan to push her and other older employees aside so that new, younger employees could move into her department. Holmberg, however, admits that Baxter had good business reasons for her assignment to the "good laboratory practices" task force in 1977 and further agreed that her various assignments from 1978 through 1984 were a "good experience," a "sound business practice," or involved challenging work. The only aspect of working at Baxter from 1978 to 1984 that Holmberg appears to have disliked was the company's failure to give her the training in new sterilization technology that she wanted and that she alleges was given to younger employees. Nevertheless, Holmberg again admits that she received the training necessary to perform her job assignments. Beyond the plaintiff's self-serving contention that Baxter used her work assignments to "put her out to pasture," what is missing from Holmberg's historical pattern is some evidence that it was motivated by age discrimination. At best, we can draw only neutral inferences from Holmberg's previous job assignments, inferences that do not provide

---

make a sufficient showing on an essential element of her case. *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. Our holding in *Oxman* requires Holmberg to be fair in her comparisons of herself to other employees. *See Oxman*, 846 F.2d at 455–56 (requiring age discrimination plaintiff in reduction-in-force case to point toward positions for which the plaintiff would have been qualified). To prevail on her claim, Holmberg would have had to produce evidence that she was qualified for alternative positions at Baxter. The only position for which Holmberg claims to have been qualified was the senior engineer position, but we have already rejected Holmberg's contentions on this matter. Because Holmberg failed to put evidence into the record regarding available jobs at Baxter for which she would have been qualified, she has failed to make a sufficient showing on this aspect of her case.

5. According to Holmberg, Baxter also deviated from its established policies on the benefits afforded to her upon termination. Specifically, Holmberg asserts that Baxter asked her to accept a reduced amount of severance pay and use

an employment agency instead of Baxter facilities to find alternate employment. Citing *Turgeon v. Howard Univ.*, 571 F.Supp. 679, 686–87 (D.D.C.1983) and *Lowry v. Whitaker Cable Corp.*, 348 F.Supp. 202, 214 (W.D.Mo.1972), aff'd, 472 F.2d 1210 (8th Cir.1973), Holmberg argues that the defendant's deviations from established procedures provides further evidence of its scheme to discriminate on the basis of age. Even assuming the veracity of Holmberg's dubious assertions in light of the documentary record, the cited cases do not support her argument. In *Lowry* and *Turgeon*, the defendant deviated from its established procedures in making the decision to terminate the plaintiff, *see Turgeon*, 571 F.Supp. at 686–87 (plaintiff qualified for retention under defendant's university regulations); *Lowry*, 348 F.Supp. at 214 (defendant violated its own regulations in filling out the plaintiff's separation notice), but any deviations in Baxter's procedures did not occur until after the decision to lay off the plaintiff had been made.

evidence to support her claim.[6]

### III. CONCLUSION

After the evidence is analyzed, Holmberg's only remaining contention is that we should draw an inference of discrimination because of all the unfavorable treatment she now perceives was inflicted upon her from 1978 to 1984. The ADEA, however, only prohibits unfavorable treatment on the basis of age. Holmberg has failed to make a sufficient showing on elements of her claim for which she would bear the burden at trial. The district court was correct in granting summary judgment in favor of the defendant, Baxter Healthcare Corporation. Costs shall be awarded to Baxter as the prevailing party, but each party shall bear their own costs insofar as they relate to Holmberg's Motion to Strike Portions of the Brief of Defendant–Appellee and to Baxter's Motion to Supplement the Record on Appeal. The judgment of the district court is hereby

AFFIRMED.

---

**6.** We need only mention in passing the plaintiff's argument that the district court improperly refused to reverse its grant of summary judgment under Fed.R.Civ.P. 59. Because we agree with the district court that summary judgment was appropriately granted in this case, we obviously see no error in the district court's refusal to reverse itself.